UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROBIN L. GENTNER, | CASE NO. 5:15CV1396 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| CAROLYN W. COLVIN,[1] ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Plaintiff Robin L. Gentner ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her application for disability insurance benefits ("DIB"). ECF Dkt. #1. In her brief on the merits, filed on October 14, 2015, Plaintiff claims that the ALJ erred: (1) by not discussing Plaintiff's request to reopen her prior application for DIB; and (2) in the finding regarding Plaintiff's credibility. ECF Dkt. #14. Defendant filed a response brief on December 28, 2015. ECF Dkt. #18. On January 11, 2016, Plaintiff filed a reply brief. ECF Dkt. #19.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed an application for DIB on December 12, 2011 alleging disability beginning February 5, 2011. ECF Dkt. #11 ("Tr.") at 16.[2] Plaintiff's claim was denied initially and upon

---

[1] On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2] All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

reconsideration. *Id.* Plaintiff then requested a hearing before an ALJ. *Id.* A hearing was held on January 29, 2014, during which Plaintiff testified. *Id.*

On March 28, 2014, the ALJ denied Plaintiff's application for DIB. Tr. at 13. The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2011. Tr. at 18. Continuing, the ALJ determined that Plaintiff did not engage in substantial activity during the period from the alleged onset date of February 5, 2011 through the date Plaintiff was last insured, June 30, 2011. *Id.* Next, the ALJ found that Plaintiff had the severe impairment of cirrhosis due to alcohol-related substance abuse, in remission. *Id.* Following the assignment of the above mentioned severe impairment, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, except that Plaintiff would need to be in close proximity to a bathroom and given flexibility for short bathroom breaks, beyond the customary two breaks per day plus a lunch break, totaling no more than one or two additional short breaks. Tr. at 19. Continuing, the ALJ determined that Plaintiff was capable of performing past relevant work. *Id.* at 22. Based on the analysis described above, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from February 5, 2011, the alleged onset date, through the date of the decision. *Id.* at 24.

Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which was denied on May 27, 2015. Tr. at 4. At issue is the decision of the ALJ dated March 28, 2014, which stands as the final decision. *Id.* at 13. On July 14, 2015, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. In her brief on the merits, filed on October 14, 2015, Plaintiff asserts that the ALJ erred: (1) by not discussing Plaintiff's request to reopen her prior application; and (2) in the finding regarding Plaintiff's credibility. ECF Dkt. #14. Defendant filed a response brief on December 28, 2015. ECF Dkt. #18. On January 11, 2016, Plaintiff filed a reply brief. ECF Dkt. #19.

## II.     SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

Plaintiff's first assignment of error asserts that the ALJ erred by not discussing her request to reopen her prior application. ECF Dkt. #14 at 8-9. Both parties recognize that the ALJ did not discuss reopening Plaintiff's prior application in the decision, and this issue will be addressed below. *See* ECF Dkt. #14 at 8-9; ECF Dkt. #18 at 3-5.

The second assignment of error asserted by Plaintiff alleges that the ALJ erred in her finding regarding Plaintiff's credibility. ECF Dkt. #14 at 9-13. When discussing Plaintiff's RFC, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. Tr. at 20. The ALJ indicated that Plaintiff alleged disability due to cirrhosis of the liver, and reported that her condition caused nausea, weakness, skin wells, severe itching, shortness of breath, forgetfulness, dry skin, diarrhea, problems balancing, fatigue, and bloating. *Id.* Continuing, the ALJ stated that Plaintiff further alleged that on a "bad day" her diarrhea symptoms were a nine on a scale of one to ten, and that she had seven "bad days" per week. *Id.* According to the ALJ, Plaintiff also testified that she experienced side effects resulting from her medication, including depression. *Id.*

The ALJ then indicated that in July 2010 objective testing conducted by William Shaheen, M.D., revealed that Plaintiff suffered from alcoholic cirrhosis. Tr. at 20. Continuing, the ALJ stated that in a follow-up appointment in August 2011, Dr. Shaheen noted that Plaintiff's symptoms were stable with no ascites or worsening encephalopathy. The ALJ stated that in December 2011, Dr. Shaheen found no change in Plaintiff's condition, although she complained of lower back pain, heartburn, and bloating. *Id.* Next, the ALJ indicated that Dr. Shaheen described Plaintiff's cirrhosis as "well controlled" and stated that recent laboratory testing was "unremarkable." *Id.*

The ALJ stated that in May 2012 Plaintiff resumed treatment with Richard Dom Dera, M.D., a physician she had visited in the past. Tr. at 20. Continuing, the ALJ indicated that Plaintiff presented to Dr. Dom Dera with complaints of diarrhea, itching skin, cloudy thoughts, and "gasps" unrelated to exertion. *Id.* The ALJ noted that Plaintiff stated she had abstained from alcohol consumption for two years and had been told that if she stayed sober she would be put on the list for

a liver transplant. *Id.* The ALJ stated that Plaintiff thereafter made a few infrequent visits to Dr. Dom Dera for some unrelated complaints. *Id.*

Next, the ALJ indicated that Plaintiff complained to Dr. Shaheen of fatigue and intermittent confusion in January 2013. Tr. at 20. The ALJ also noted that Plaintiff stated that she had been sober for two and a half years and wished to pursue a liver transplant. Continuing, the ALJ indicated that following the January 2013 appointment, Plaintiff apparently believed that her liver problems had abated because a note written by Dr. Shaheen in March 2013 stated that Plaintiff was refusing to schedule an evaluation for a liver transplant, and Plaintiff did not indicate any liver symptoms during a visit with Dr. Dom Dera in June 2013. *Id.* at 20-21. The ALJ stated that in August 2013, Plaintiff returned to Dr. Shaheen, and Dr. Shaheen noted that Plaintiff's only complaints were intermittent bouts of confusion and that she had declined a liver transplant evaluation. *Id.* at 21. Continuing, the ALJ noted that an ultrasound of Plaintiff's liver indicated the continued cirrhosis with hetergeneity. The ALJ stated that Plaintiff visited Dr. Dom Dera in December 2013, and that the results of the visit were unremarkable as Dr. Dom Dera only refilled Plaintiff's prescription and completed disability forms. *Id.*

Based on the above, the ALJ found that Plaintiff underwent a relatively unremarkable course of treatment for her cirrhosis and had declined to pursue a liver transplant, indicating that her symptoms are not as severe as alleged. Tr. at 21. Consequently, the ALJ determined that Plaintiff was capable of performing work at all exertional levels, with the limitations described above. *Id.* The ALJ then noted that there were no medical opinions prior to Plaintiff's date last insured, and stated that the treating source opinions provided after the date last insured were not supported by the treatment notes prior to that date. *Id.*

The ALJ then discussed the opinions of the state agency medical consultants who examined Plaintiff's medical claims at the initial and reconsideration levels, finding that there was insufficient evidence to evaluate the claims. Tr. at 21. No weight was given to the state agency medical consultants' opinions by the ALJ because the state agency medical consultants did not have access to the records which later comprised the medical evidence of record at the time of the ALJ's decision. *Id.*

The ALJ then stated that Dr. Dom Dera issued an opinion in July 2012, indicating that Plaintiff: was unable to lift or carry approximately one-fifth of the day; could stand or walk for three hours in an eight-hour workday; had limitations on her ability to sit; could never climb; could occasionally balance, stoop, crouch, kneel, and crawl; would have some environmental restrictions, including exposure to heights, moving machinery, temperature extremes, dust, and fumes; would likely miss about four days of work per month due to her impairment; and would be off-task twenty percent of a typical workday. Tr. at 21. The ALJ afforded little weight to Dr. Dom Dera's July 2012 opinion, stating that the opinion was based on little more than Plaintiff's subjective complaints and that Dr. Dom Dera's office notes from the same day the opinion was issued clearly indicated that the opinion was based on Plaintiff's self-reported and subjective complaints. *Id.* Continuing, the ALJ indicated that Dr. Dom Dera's notes stated that he had not seen Plaintiff for "quite a while," that he did "not have much information to go on when filling out forms," and that he "completed [the forms] with [Plaintiff's] reported complaints and with [his] understanding of what someone with her medical conditions would experience." *Id.*

The ALJ then discussed Dr. Dom Dera's December 2013 opinion indicating that Plaintiff: could lift or carry twenty pounds for twenty-percent of the day; had no limitations standing or walking, but "reported flushing" if standing for a long time; could occasionally climb, stoop, and crouch; could frequently balance; could never kneel or crawl; would have some environmental restrictions including exposure to chemicals and fumes; would likely miss about four days per week due to her impairment; and would be off-task fifteen percent of a typical workday. Tr. at 22. The ALJ also stated that Dr. Dom Dera opined that Plaintiff would have noticeable difficulty in several areas of understanding, memory, concentration, pace, social interaction, and adaptation from between ten percent to twenty percent of the workday, and would miss about four days per month due to these mental limitations.[3] *Id.* Continuing, the ALJ afforded little weight to Dr. Dom Dera's

---

[3]It is not clear whether the ALJ's decision indicates that Dr. Dom Dera opined that Plaintiff would miss roughly four days per month due to her physical impairments and four days due to her mental impairments, or if the four days Plaintiff would miss for her physical impairments as well as her mental impairments would be missed concurrently. *See* Tr. at 21-22.

-5-

December 2013 opinion, stating that the opinion was not supported by Dr. Dom Dera's own record containing treatment notes that were largely unremarkable, and that the opinion makes little reference to any significant symptoms that would cause the limitations prescribed therein. *Id.* The ALJ also indicated that in June 2013 Plaintiff reported to Dr. Dom Dera that she was "mentally much better," and that, moreover, Dr. Dom Dera was a general practitioner, not a mental health specialist. *Id.*

At the conclusion of the discussion regarding Plaintiff's RFC, the ALJ stated that the prescribed RFC was supported by the fact that Plaintiff underwent unremarkable liver treatment, declined to pursue a liver transplant, and because Plaintiff was not entirely credible. Tr. at 22. Continuing, that ALJ found that, through the date last insured, Plaintiff was capable of performing past relevant work and that jobs, other than Plaintiff's past relevant work, that she was able to perform existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from February 5, 2011, the alleged onset date, through June 30, 2011, the date Plaintiff was last insured. *Id.* at 23.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found the plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra* (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (internal citations omitted)).

## V. LAW AND ANALYSIS

### A. Request to Reopen

Plaintiff first asserts that she applied for DIB in November 2010, was denied DIB, and did not appeal the decision.[4] ECF Dkt. #14 at 8. Next, Plaintiff states that 20 C.F.R. § 404.988 dictates that a determination may be reopened: (a) within twelve months of the date of the notice of the initial determination, for any reason; and (b) within four years of the date of the notice of the initial determination for good cause.[5] *Id.* Plaintiff states that she filed her second application for DIB in December 2011, and that "[i]t is presumed that her denial was no less than four weeks following her application in November 2010 and hence was within twelve months of the denial of the first application." *Id.* at 8-9. Continuing, Plaintiff states, "[i]n addition, [20 C.F.R. § 404.988 (b) which [sic] allows for reopening within four years if new and material evidence is furnished." *Id.* at 9. Plaintiff then indicates that she requested reopening of her first application in her pre-hearing brief to the ALJ, but did not renew the request at the hearing or in her brief to the Appeals Council. *Id.* However, according to Plaintiff, the ALJ erred by not addressing the request for reopening in her decision. *Id.* Finally, Plaintiff asserts that when she filed her second application in December 2011 she submitted new evidence that could not have been submitted when she filed her first application for DIB. *Id.*

Defendant contends that Plaintiff's request for reopening, contained in her pre-hearing brief, was completely conclusory and included no substantive argument, and, as such, Plaintiff has waived the right to request the Court's review of the reopening issue. ECF Dkt. #18 at 4. Continuing, Defendant asserts that even if Plaintiff has not waived her right to request review of the reopening issue, her request for remand also fails because: (1) an ALJ's determination not to reopen a prior application is not a final decision is not reviewable unless the plaintiff makes a colorable

---

[4]Plaintiff states, "[Plaintiff] applied for [DIB] in November 2010 shortly after she was first diagnosed with alcoholic cirrhosis of the liver. She did not appeal that decision, apparently." ECF Dkt. #14 at 8. Although Plaintiff does not specifically indicate that the November 2010 DIB application was denied, it is implied.

[5]Plaintiff does not discuss the conditions for reopening contained in 20 C.F.R. § 404.988(c). *See* ECF Dkt. #14 at 8.

constitutional claim, which Plaintiff has not done; and (2) there is no indication of new evidence relevant to the prior period, especially considering Plaintiff's alleged onset date is February 5, 2011, presumably after the date of the initial denial of Plaintiff prior application for DIB. *Id.* at 4-5.

Plaintiff's arguments are without merit. First, in an effort to meet the requirements of 20 C.F.R. § 404.988(a), namely, that an application may be reopened for any reason within twelve months of the date of notice of the initial determination, Plaintiff states:

> [Plaintiff] filed her second application in December 2011. It is presumed that her denial was no less than four weeks following her application in November 2010 and hence was within twelve months of the denial of the first application. [sic]

ECF Dkt. #14 at 8-9. As an initial matter, it is unclear what exactly Plaintiff is arguing in the above passage. It appears that Plaintiff is asserting that her November 2010 DIB application was presumably denied within four weeks, putting that denial within one year of the December 2011 DIB application and making her eligible for reopening pursuant to 20 C.F.R. § 404.988(a). However, Plaintiff does not provide any indication or evidence that her November 2010 application was, in fact, denied within four weeks, instead relying on a presumption that the denial fell within that time frame. *See* ECF Dkt. #14 at 9.

Moreover, Plaintiff's argument is illogical. For Plaintiff to satisfy the one-year reopening provision of 20 C.F.R. § 404.988(a) she must demonstrate that a determination was issued on her initial DIB application, filed on November 3, 2010, and that her request for reopening was made within one year of that date.[6] Plaintiff then appears to assert that it is presumed that her initial DIB application was denied within four weeks of filing. ECF Dkt. #14 at 8-9. By Plaintiff's own calculation, giving her the benefit of the doubt, her initial DIB application was denied by December 3, 2010. Plaintiff also indicates that she requested reopening of her first application in her pre-hearing brief on the subsequent DIB application. *Id.* at 9. Plaintiff's pre-hearing brief requesting reopening of the initial DIB application is dated January 23, 2014. Tr. at 148. Plaintiff has failed

---

[6]Plaintiff did not provide the specific day in November 2010 on which her initial DIB application was filed in her brief on the merits. *See* ECF Dkt. #14. A review of the record revealed that Plaintiff's initial DIB application was filed on November 3, 2010. Tr. at 150.

to demonstrate that she met the requirements of 20 C.F.R. § 404.988(a) as she requested reopening well outside of the one-year period in which a determination may be reopened for any reason.

Additionally, Plaintiff has failed to demonstrate that she met the requirements of 20 C.F.R. § 404.988(b). 20 C.F.R. § 404.988(b) requires a showing of good cause for reopening a determination. Plaintiff does not argue that good cause exists, instead stating:

> When [Plaintiff] filed her second application in December 2011 she submitted new evidence that could not have been submitted when she first filed since it addressed her care in 2011.[7]

ECF Dkt. #14 at 9. Plaintiff does not indicate what new evidence she is referring to or assert that the new evidence constitutes good cause, but, again giving Plaintiff the benefit of the doubt, it appears that she is referencing new medical evidence that was not in existence at the time of the November 2010 DIB application because her second DIB application was filed in December 2011 and the new medical evidence was created in the interim. Plaintiff makes no attempt to argue that any of the evidence that was created following the denial of Plaintiff's November 2010 DIB application is material to the issue of reopening.

Even if Plaintiff had presented cognizable arguments, the Court "may not review a refusal to reopen an application for benefits absent a constitutional claim." *Blaha v. Sec. of. Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Defendant correctly asserts, and the above discussion demonstrates, that Plaintiff has not alluded to a colorable constitutional claim. Accordingly, this Court is without jurisdiction to review the issue of the reopening of Plaintiff's initial application for DIB. Plaintiff's arguments regarding the reopening of her initial DIB application are without merit for the reasons stated above.

---

[7] It is presumed that Plaintiff is making this statement in regards to 20 C.F.R. § 404.988(b). Plaintiff states, "[i]n addition, [20 C.F.R. § 404.988(b)] which [sic] allows for reopening within four years if new and material evidence is found." ECF Dkt. #14 at 9. Following this statement, Plaintiff offers no immediate indication that there is new or material evidence, instead moving on to state that the only time Plaintiff raised the issue of reopening was in her pre-hearing brief. *Id.* Plaintiff then jumps back to a discussion of new evidence, but excludes any indication or argument that the evidence is material.

### **B.** **Credibility**

Plaintiff next avers that the ALJ did not rely on substantial evidence when finding that Plaintiff was not credible. ECF Dkt. #14 at 9-13. The Sixth Circuit has held that it is the job of the ALJ, not the reviewing court, to evaluate a claimant's credibility. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). The credibility determination of an ALJ is given great weight. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). An ALJ is justified in determining that a claimant's complaints about his or her pain were exaggerated and not credible when the objective medical evidence does not support the claimed severity of the symptoms. *See Spicer v. Apfel*, 15 F. Appx. 227, 234 (6th Cir. 2001)

Plaintiff indicates that the ALJ considered Plaintiff's course of treatment "fairly unremarkable," and asserts that the ALJ's conclusion was unwarranted. *Id.* Plaintiff argues that the ALJ did not come to the conclusion that Plaintiff was malingering, citing precedent from the Ninth Circuit holding that unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing. *Id.* at 11 (citing *Lester v.* Chater, 81 F.3d 821, 834 (9th Cir. 1995) (citing Swenson *v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

Next, Plaintiff notes that the ALJ found that Plaintiff had the severe impairment of cirrhosis due to alcohol-related substance abuse, in remission. ECF Dkt. #14 at 11. Plaintiff then asserts that she suffers from conditions, both physical and mental that the ALJ did not consider, stating:

> [C]onsistently throughout the record, [Plaintiff] complained of weakness and fatigue, low back pain and/or depression.
>
> [Plaintiff's] testimony was that in 2011 she was incapable of working because she 'was having depression and forgetfulness, dizziness, hives, rashes, confusion, and tiredeness.  I was tired all the time, sleepy... weakness.'

ECF Dkt. #14 at 11-12 (internal citations omitted). Plaintiff then claims that because she was not believed, her complaints of weakness, low back pain, and fatigue were not considered when the ALJ made his RFC finding. *Id.* at 12.

Finally, Plaintiff avers that the ALJ mistakenly found that she was refusing treatment when, in actuality, she could not afford the deductible for testing associated with a liver transplant. ECF

-11-

Dkt. #14 at 13. Plaintiff asserts that she had a $10,000.00 deductible when the testing was offered, however, the testing schedule was spread over the course of two years, thus obligating Plaintiff to satisfy two $10,000.00 deductibles. *Id.* Accordingly, when offered the chance to wait on the testing, Plaintiff accepted the offer. *Id.* Plaintiff then claims that the situation presented here appears to be "exactly the situation explained in [Social Security Rule ("S.S.R.") 82-59]." *Id.* On these bases, Plaintiff argues that the ALJ erred.

Defendant contends that the ALJ discussed a wealth of evidence that pointed to the conclusion that Plaintiff's limitations were not as severe as alleged, noting that the ALJ remarked that Plaintiff's course of treatment was "fairly unremarkable" and that she declined to pursue a liver transplant. ECF Dkt. #18 at 5-6. According to Defendant, these points support the ALJ's determination that Plaintiff's symptoms were not as severe as alleged. *Id.* at 6. Continuing, Defendant asserts that Plaintiff points only to her subjective complaints to support her credibility argument and that the rest of the record does not support the claimed severity of Plaintiff's symptoms. *Id.* at 7. Finally, Defendant states that there is no indication that Plaintiff could not afford the suggested liver transplant and related testing, and that Plaintiff only stated that she wanted to have the treatments during a single annual deductible cycle for purposes related to her health insurance. *Id.*

Plaintiff's arguments are without merit. As an initial matter, Plaintiff has not established that Defendant's reasons for rejecting her testimony must be clear and convincing unless there is affirmative evidence showing that Plaintiff was malingering, as Plaintiff cites only Ninth Circuit precedent that is not binding on this Court. *See* ECF Dkt. #14 at 11. Rather, according to Sixth Circuit precedent, the Court reviews the final decision of Defendant for compliance with applicable legal criteria and to determine whether substantial evidence exists on the record to support each necessary finding. *Abbott*, 905 F.2d at 922.

Defendant's assertion that Plaintiff points only to her subjective complaints to support her credibility is well taken. As discussed above, Plaintiff supports her argument that the ALJ did not consider all of her impairments with the following language:

-12-

> [C]onsistently throughout the record, [Plaintiff] *complained* of weakness and fatigue, low back pain and/or depression.
>
> [Plaintiff's] *testimony* was that in 2011 she was incapable of working because she "was having depression and forgetfulness, dizziness, hives, rashes, confusion, and tiredeness. I was tired all the time, sleepy... weakness."

*See* ECF Dkt. #14 at 11-12 (emphasis added). Plaintiff fails to cite actual medical evidence of alleged conditions that the ALJ did not consider, instead, relying instead on her complaints and her own testimony. *Id.* Additionally, the ALJ addressed the objective medical evidence as well as the opinion evidence in the decision. Tr. at 20-22. The ALJ correctly indicated that the July 2012 opinion issued by Dr. Dom Dera was based on Plaintiff's self-reported subjective complaints, as indicated by Dr. Dom Dera's statements that he had not seen Plaintiff for "quite a while," that he did "not have much information to go on when filling out forms," and that he "completed [the forms] with [Plaintiff's] reported complaints and with [his] understanding of what someone with her medical conditions would experience." *Id.* at 21-22 (citing *id.* at 198-99). As for the December 2013 opinion issued by Dr. Dom Dera, the ALJ correctly indicated that the opinion was unremarkable and made little reference to any significant symptoms that would cause severe limitations.[8] Moreover, the ALJ correctly stated that the December 2013 opinion issued by Dr. Dom Dera was a medical source assessment of Plaintiff's mental limitations, and that there was no indication that Dr. Dom Dera was a mental health specialist. Tr. at 22. The ALJ did not err when he did not simply take Plaintiff at her word and consider all of her alleged complaints, absent objective medical evidence supporting those complaints, when making the RFC finding. *See Spicer*, 15 F. Appx. at 234.

Plaintiff's contention that the ALJ made the assumption that she was refusing treatment rather than being unable to afford treatment is incorrect. Continuing, Plaintiff indicates that S.S.R. 82-59 applies, and that "[t]his would appear to be exactly the situation explained in [S.S.R. 82-59]."

---

[8]The December 2013 opinion is a medical source assessment regarding Plaintiff's mental health. Tr. at 256. The medical source assessment asks the physician to rank a list of abilities on a scale of one through five, with one imposing the least severe restrictions on the ability and five imposing the most severe restriction on the ability. *Id.* Dr. Dom Dera did not rank the limitations on any of the abilities above a three, with the majority of the abilities being assigned a rank of one or two. *Id.*

ECF Dkt. #14 at 13. Plaintiff states that S.S.R. 82-59 explains that a claimant should be given an opportunity to fully express the specific reasons for not following the prescribed treatment. In her brief on the merits, Plaintiff indicates:

> Included in the reasons elucidated in this ruling include "the individual is unable to afford prescribed treatment... but for which free community resources are unavailable."

ECF Dkt. #14 at 13 (quoting S.S.R. 82-59). Plaintiff asserts that the testing schedule spanned two years, obligating Plaintiff to satisfy two $10,000.00 deductibles, so when offered the "chance to wait, [Plaintiff] accepted it." *Id.*

After selectively quoted S.S.R. 82-59 in an attempt to tailor it to the instant case, Plaintiff now claims that her situation is the exact situation explained in the S.S.R. The full text of the portion Plaintiff quotes from S.S.R. 82-59, under the heading "Justifiable Causes for Failure to Follow Prescribed Treatment," reads:

> The individual is unable to afford prescribed treatment *which he or she is willing to accept*, but for which community resources are unavailable.

S.S.R. 82-59 (emphasis added). Once the portion of S.S.R. 82-59 is read absent the ellipsis inserted by Plaintiff, it becomes quite clear that the situation contemplated by S.S.R. 82-59 is distinct from the situation in the instant case. At her hearing, Plaintiff gave the following testimony regarding testing associated with the recommended liver transplant:

> Cleveland Clinic called me and I was at a point to where they wouldn't give me all these tests at that time because I wasn't quite at that point, and I have a $10,000.00 deductible. So, I didn't want to do some tests and then go in the next year and do the tests to where I'd have a $20,000.00 bill. And they said I could wait a while, so that's what I'm doing.

Tr. at 39. Nowhere in her testimony does Plaintiff indicate that she was unable to afford treatment. *Id.* at 29-44. Rather, it appears that Plaintiff wanted to undergo the treatment in a single annual deductible cycle so that her deductible would be $10,000.00, not $20,000.00. In any event, Plaintiff was unwilling to accept the treatment at that time, indicating that she would wait a while before undergoing the treatment. S.S.R. 82-59 requires that an individual be willing to accept the treatment. Plaintiff was unwilling to accept the testing associated with a liver transplant, instead choosing to forgo the treatment until a more favorable time in her health insurance deductible cycle. Accordingly, S.S.R. 82-59 does not apply.

-14-

Plaintiff has failed to demonstrate that the ALJ's credibility finding was not based on substantial evidence. Rather, the ALJ reasonably considered the objective medical evidence, opinion evidence, and Plaintiff's statements regarding her limitations before finding that she was not entirely credible. For the above reasons, the ALJ's determination that Plaintiff was not entirely credible was supported by substantial evidence.

## **VI.** **CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.


Date: August 26, 2016        */s/George J. Limbert*
                             GEORGE J. LIMBERT
                             UNITED STATES MAGISTRATE JUDGE